## Bosworth, Auditor, v. R. H. Wolfe & Son.

(Decided May 21, 1914.)

### Appeal from Franklin Circuit Court.

Statutes—Construction of.—Chapter 136 of the Acts of 1912 relating to the payment of certain indebtedness of the House of Reform incurred prior to June 14, 1910, while the institution was operated on a per capita allowance basis, construed as to the

time from which interest on the claims of the several creditors should be computed.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General, for appellant.

BROWN & NUCKOLS for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

Prior to June 14, 1910, the Houses of Reform were provided by law with an annual per capita allowance of one hundred dollars per annum for each inmate, which, it appears, was inadequate to pay the expenses of the institution.

By Section two of Chapter 118 of the Acts of 1910, the annual per capita allowance was abolished; and it was provided that the expenses of the Houses of Reform should be paid out of the State Treasury. This act went into effect on June 14, 1910.

The Legislature of 1910 also appropriated the sum of $38,928.84 to pay the deficit which during the years 1908 and 1909 arose by reason of the insufficiency of the per capita allowance. (See Section two of Chapter 100 of the Acts of 1910).

However, it appears that after the disbursement of that sum, there still remained certain liabilities, which with the expenses of the institution up to June 14, 1910, amounted on that date to the sum of $37,928.09 in excess of the per capita allowance.

In December, 1911, a report of the unpaid accounts and names of the persons to whom same were owing on June 14, 1910, was prepared by the Superintendent of the institution, and transmitted to the Board of Prison Commissioners. This report states that the claims therein included were made out and submitted by the several creditors, at the request of the Board, and that it represents the outstanding indebtedness in full, of the institution, to June 14, 1910. Included in this list of creditors was an item due appellees, R. H. Wolfe & Son. of thirty-five hundred dollars.

The Legislature of 1912 then enacted Chapter 136 of the Acts of 1912, which is as follows:

"Whereas, prior to the 14th day of June, 1910, the Houses of Reform (one for boys and one for girls) at

Greenaale, Kentucky, were operated upon a per capita basis, and,

"Whereas, the per capita then provided for was inadequate to maintain the institutions and clothe, feed, educate and treat the inmates; and such inadequate provision resulted in a deficit up to June 14, 1910, amounting to $37,928.09, which deficit is represented by outstanding and unpaid claims against said institution; and,

"Whereas, it is just and proper that said indebtedness be paid:

"Therefore, be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1. That the Auditor of Public Accounts be, and he is hereby authorized and directed, upon the proper certification and approval of the said claims representing said deficit, by the Board of Prison Commissioners, in the manner provided by law, to audit said claims, and to draw his warrant upon the treasury therefor in favor of the respective persons and concerns to which said items of indebtedness are due, including interest on each from the date thereof until paid, at the rate of six per cent per annum; and the treasurer is authorized and directed to pay the same; and there is hereby appropriated out of the funds in the hands of the treasurer, amount sufficient to pay said items constituting said deficit, not exceeding the sum of $37,928.09, with six per cent interest thereon from the date of each of said claims."

The Auditor on July 22, 1912, in payment of the amount he conceived to be due appellees under this Act, drew his warrant upon the treasury in favor of appellees, in the sum of $3,862.25; whereupon, appellees, claiming that the warrant so drawn was not in accordance with the provisions of the Act, instituted this action of mandamus against the Auditor in the Franklin Circuit Court, contending that under the Act they are entitled to interest upon each item of their account from the date of each of said items until paid.

The itemized account, which is filed with the petition, shows that from July 1, 1906, to June 14, 1910, the appellees furnished to the House of Reform merchandise to the value of $26,888.20, and that during the period from July 1, 1906, to March 20, 1911, they received payments aggregating the sum of $23,389.10.

The lower court held that under the Act appellees were entitled to interest upon each of the items comprising the account, from the respective dates thereof; and directed the commissioner of the court to state the account by fixing the last date of each calendar month as the date of the maturity of the items furnished in such month, and to allow the Commonwealth credit for the payments made by it as of the respective dates of such payments; in other words, that the account should be computed by the rule of partial payments, with interest periods or new principal periods corresponding with the calendar months. The report of the commissioner having been filed, the court rendered judgment in accordance therewith; and the Auditor of Public Accounts appeals from the judgment, seeking an interpretation of the Act, the only question involved being the interest to which appellees are entitled thereunder.

The Act in question was based upon the report of the Superintendent of the House of Reform, which showed that the total outstanding indebtedness of the institution as of June 14, 1910, was $37,928.09; that is the sum mentioned in the preamble of the Act; and both the report and the Act state that $37,928.09 is the amount of the deficit to that date.

The Act directs the Auditor to draw his warrants in favor of the persons to which "said items of indebtedness are due, including interest on each from the date thereof until paid;" and it further provides that there is appropriated "an amount sufficient to pay said items of the indebtedness constituting said deficit, not exceeding $37,928.09, with six per cent interest thereon from the date of each of said claims."

We think it manifest that the word "items" as used in the Act means items in the report of the Superintendent of the House of Reform showing the outstanding indebtedness of the institution, that report exhibiting forty-three creditors whose claims aggregate $37,928.09, the exact amount mentioned in the Act; and that the interest to be paid under the Act is the interest on the sum due to each of said creditors; not upon each item in the account of each of said creditors, but upon the total of each of such accounts.

This interpretation of the word "item" as used in the Act is further supported by the use of that word in that sentence which provides that there is appropriated

"an amount sufficient to pay said items constituting said deficit." The items meant are undoubtedly the items of the report showing what the deficit consisted of, and to whom due.

The right of appellees to interest upon their account is fixed by the act; and it is only with the proper construction of the Act and the legislative intent that we are here concerned. It seems to us that the Legislature understood that $37,928.09, the amount mentioned in the Act, was the full amount of the deficit up to June 14, 1910, including everything; and intended that each claim should draw interest from June 14, 1910, until paid.

The judgment is, therefore, reversed for proceedings consistent with this opinion.